UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DR. STEVEN COHEN,                              :
                                               :  **<u>DECISION AND ORDER</u>**
                       Plaintiff,              :
                                               :  04 Civ. 5921 (RMB) (MHD)
       - against -                             :
                                               :
UNITED STATES FIDELITY AND GUARANTY            :
COMPANY a/k/a ST. PAUL FIRE AND MARINE         :
INSURANCE, ST. PAUL TRAVELERS, and THE         :
ST. PAUL COMPANIES, INC.,                      :
                                               :
                       Defendants.             :
------------------------------------------------------------x

**I.     Introduction**

On or about June 24, 2004, Dr. Steven Cohen ("Dr. Cohen" or "Plaintiff") filed this action against United States Fidelity and Guaranty Company a/k/a St. Paul Fire and Marine Insurance ("USF&G"), St. Paul Travelers, and The St. Paul Companies, Inc. (collectively, "Defendants") in New York State Supreme Court for the County of New York. (See Complaint, dated June 23, 2004.) On or about July 29, 2004, Defendants removed the action to this Court on the basis of diversity of citizenship. 18 U.S.C. § 1332.

Plaintiff served an amended complaint on or about November 1, 2004, asserting claims of breach of contract ("First Cause of Action"), violation of New York's General Business Law § 349 ("GBL § 349") ("Second Cause of Action"), and "bad faith refusal to pay an insurance claim" ("Third Cause of Action"), arising out of USF&G's alleged refusal to pay business interruption losses sustained by Plaintiff, a chiropractor, after a water pipe burst in his office on or about April 18, 2002. (See Amended Complaint, dated November 1, 2004 ("Amended Complaint" or "Compl."), ¶¶ 31-50.) Plaintiff seeks "direct damages," consequential damages, punitive damages, and attorneys' fees with respect to his breach of contract and bad faith claims.

He seeks actual damages and attorneys' fees pursuant to GBL § 349. (See Compl. ¶¶ 35, 42, 45, 50.)

On or about November 18, 2004, Defendants moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the following of Plaintiff's claims: GBL § 349 claim; claim for punitive damages; claim for consequential damages; claim for attorneys' fees (under the breach of contract claim); and all claims against Defendants other than USF&G (the "non-USF&G Defendants"). See Memorandum of Law in support of Defendants' Motion to Dismiss, dated November 18, 2004 ("Defs'. Mem.").) Plaintiff filed an opposition on or about December 16, 2004. (See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint, dated December 8, 2004 ("Pl. Mem.").) Defendants submitted a reply on December 20, 2004. (See Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss, dated December 20, 2004 ("Defs.' Reply").) Oral argument was held on May 3, 2005. **For the reasons set forth below, the Court grants Defendants' motion to dismiss. Plaintiff is given leave to replead.**

## II. Background

For the purposes of this motion, the allegations contained in the Amended Complaint are taken as true. See Abraham v. Penn Mut. Life Ins. Co., No. 98 Civ. 6439, 2000 WL 1051848, at *2 (S.D.N.Y. July 31, 2000).

"On or about July 22, 2001, USF&G issued an insurance policy to Dr. Cohen, by which USF&G agreed to provide insurance coverage to Dr. Cohen, including business interruption coverage, in consideration for which, Dr. Cohen agreed to pay [and did pay] premiums (the 'Policy')." (Compl. ¶¶ 17-18.) On or about April 18, 2002, a pipe burst at Dr. Cohen's office

and "water was emitted into and about the Office." (Id. ¶¶ 19-20.) "On or about October 11, 2002, Dr. Cohen began to experience significant losses in his business as a result of the Pipe Burst." (Id. ¶ 21.) USF&G deemed the pipe burst "to constitute an occurrence within the meaning of the Policy, triggering an obligation by USF&G to provide coverage," including indemnification "for all business losses resulting from occurrences . . . for a period of up to 12 months." (Id. ¶¶ 22-24.) Plaintiff submitted to USF&G a Proof of Loss in the amount of $86,241. (See id. ¶¶ 25-27.) "Although acknowledging the existence of coverage and an occurrence, USF&G has refused to pay the amount of the loss, despite Dr. Cohen's repeated demands to do so." (Id. ¶ 28.)

Plaintiff alleges that "USF&G has no arguable justification for failing to pay Dr. Cohen under the Policy" and that "[a]s a result of USF&G's conduct, Dr. Cohen has been forced to sustain additional, consequential losses." (Id. ¶¶ 29-30.) Plaintiff also alleges that:

> Upon information and belief, defendants developed a scheme (the 'Scheme') by which they agreed to seek to artificially reduce the amount they would pay claimants for all business interruption losses occurring after the 9/11/01 tragedy . . . . . As part of the Scheme, defendants would inform all insureds whose businesses were located in downtown New York City that their base-line income was necessarily and permanently reduced as a result of the 9/11 Tragedy, such that, any ensuing business interruption would be compensable in a lesser amount.

(Id. ¶ 38.)

### III. Legal Standard

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court "must accept the factual allegations of the complaint as true, and draw all reasonable inferences in favor of the plaintiff." Abraham, 2000 WL 1051848, at *2 (citing Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996)). "Dismissal of a complaint for failure to state a claim . . . is proper only where it

-3-

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Lava Trading Inc. v. Hartford Fire Ins. Co, 326 F. Supp. 2d 434, 438 (S.D.N.Y. 2004) (internal quotation omitted); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "'A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).'" Lava Trading, 326 F. Supp. 2d at 438 (quoting DeJesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996)).

## IV.    Analysis

### A.  GBL § 349 claim

Defendants argue that the Amended Complaint fails to state a claim under GBL § 349 because the conduct Plaintiff alleges relates "to a contractual dispute and does not constitute consumer oriented conduct." (Defs.' Mem. at 8-9.) Defendants also argue that the Amended Complaint does not (sufficiently) allege, among other things: (i) "that the challenged acts or practices were likely to mislead a reasonable consumer, acting reasonably under the circumstances"; (ii) "that plaintiff suffered injury as a result of the 'scheme'"; and (iii) that Plaintiff "was misled by the 'scheme.'" (Id. at 10-11.) Defendants further contend that "the conclusory allegations that [the non-USF&G Defendants] engaged in [the Scheme] are not sufficient to set forth a cognizable claim against" them. (Id. at 13.)

Plaintiff responds that he has alleged a claim under GBL § 349 because he "alleges that defendants' conduct did, in fact, 'have, a direct impact upon the public at large,'" and "that defendants entered into an intentional scheme to defraud him and not pay him his benefits." (Pl. Mem. at 10) (quoting Compl. ¶ 41). Plaintiff also states that "Dr. Cohen has alleged that USF&G's actions, in creating and implementing a scheme to defraud the general public, were

-4-

part of an overriding conspiracy among all of the defendants." (Id. at 2) (emphasis in original).

GBL § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a). To state a claim under GBL § 349, a plaintiff must, "at the threshold, charge conduct that is consumer oriented. The conduct . . . must have broad impact on consumers at large; 'private contract disputes unique to the parties . . . would not fall within the ambit of the statute.'" New York Univ. v. Continental Ins. Co., 662 N.E.2d 763, 770 (N.Y. 1995) (quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 647 N.E.2d 741, 745 (N.Y. 1995). "[C]ourts have found this requirement satisfied where plaintiffs expressly alleged the existence of a claim settlement policy designed to deceive certain categories of policyholders." USAlliance Federal Credit Union v. Cumis Ins. Soc'y, Inc., 346 F. Supp. 2d 468, 472 (S.D.N.Y. 2004); see also Greenspan v. Allstate Ins. Co., 937 F. Supp. 288, 294 (S.D.N.Y. 1996).

After meeting this threshold, a plaintiff must establish "that defendant is engaging in an act or practice that is deceptive in a material way and that plaintiff has been injured by it." New York Univ., 662 N.E.2d at 770. A "deceptive act or practice" is a "representation or omission 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" Shapiro v. Berkshire Life Ins. Co., 212 F.3d 121, 126 (2d Cir. 2000) (quoting Oswego, 647 N.E.2d at 745). "Although it is not necessary under the statute that a plaintiff establish the defendant's intent to defraud or mislead, proof of scienter permits the court to treble the damages up to $1000." Oswego, 647 N.E.2d at 745. Further, "while the statute does not require proof of justifiable reliance, a plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual, although not necessarily

pecuniary, harm." Id.; see also Gaidon v. Gaurdian Life Ins. Co. of Am., 725 N.E.2d 598, 603 (N.Y. 1999) ("General Business Law § 349 contemplates actionable conduct that does not necessarily rise to the level of fraud.").

Plaintiff sufficiently alleges that the Scheme was "consumer oriented" and that Defendants informed "all insureds whose businesses were located in downtown New York City that their base-line income was necessarily and permanently reduced as a result of the 9/11 Tragedy, such that any ensuing business interruption would be compensable in a lesser amount." (Compl. ¶ 38.) See Greenspan, 937 F. Supp. at 294. And, these allegations sufficiently allege the non-USF&G Defendants' participation in the Scheme. See Fed. R. Civ. P. 8(a).

At the same time, Plaintiff offers only conclusory (and insufficient) allegations concerning the remaining elements of a GBL § 349 claim. (See Compl. ¶ 41 ("The Scheme is intentional; misleading in material aspects, has had, and continues to have, a direct impact upon the public at large and Dr. Cohen in particular; and has caused damages to Dr. Cohen.").) See, e.g., Lava Trading, 326 F. Supp. 2d at 438 ("[C]onclusory allegations, even of the existence of a claim settlement policy designed to deceive the public, are not sufficient to state a claim under Section 349 in the absence of factual allegations in support thereof."); see also Straker v. Metropolitan Transit Auth., 333 F. Supp. 2d 91, 102 (E.D.N.Y. 2004).

**B. Punitive Damages**

Defendants argue that "the amended complaint does not indicate that the defendants' alleged conduct is actionable as a tort independent of the [insurance contract]," and, therefore, cannot give rise to a claim for punitive damages. (Defs.' Mem. at 7.) Plaintiff responds that "the allegations of the complaint state a claim for relief under § 349 of the General Business Law . . .,

a tort independent of the [breach] of contract claim" and so "Dr. Cohen may seek punitive damages on his claim arising from § 349 of the General Business Law." (Pl. Mem. at 16).

Because the Court is dismissing Plaintiff's GBL § 349 claim, Plaintiff's claim for punitive damages, which is predicated upon Plaintiff's GBL § 349 claim, is also dismissed.[1]

## C. Consequential Damages

Defendants argue that: (i) the Amended Complaint fails to allege that "the unspecified consequential damages which [Plaintiff] allegedly sustained were within the contemplation of USF&G at the time of or prior to issuance of the policy," (Defs.' Mem. at 5); (ii) "the type of consequential damages which plaintiff allegedly sustained is not even identified," (Defs.' Reply at 4); (iii) "the amended complaint fails to identify any provision or language in the insurance policy which indicates that recovery of consequential damages was within the contemplation of

---

[1] At oral argument, Plaintiff's counsel made clear that Plaintiff is seeking punitive damages under his breach of contract claim, and that his GBL § 349 claim meets the "independent tort" element of such a claim. (See Transcript of Proceedings held on May 3, 2005.) See New York Univ., 662 N.E.2d at 767 ("when the claim arises from a breach of contract" the "defendant's conduct must be actionable as an independent tort"). While not resolving the issue, the Court notes that while some courts appear to have held that GBL § 349 may support a claim for punitive damages, see Skibinsky v. State Farm Fire & Cas. Co., 775 N.Y.S.2d 200, 201-02 (N.Y. App. Div. 2004) (3d Dep't); Latiuk v. Faber Construction Co., Inc., 703 N.Y.S.2d 645, 646 (N.Y. App. Div. 2000) (4th Dep't); see also Grand General Stores, Inc. v. Royal Indem. Co., No. 93 Civ. 3741, 1994 WL 163973, at *5 (S.D.N.Y. 1994), other courts have concluded that GBL § 349 limits the recovery that may be had. See City of New York v. Coastal Oil of New York, Inc., No. 96 Civ. 8667, 1999 WL 493355, at *1, 13-15 (S.D.N.Y. July 12, 1999) ("[A]dditional damages may not increase the award to plaintiffs on this claim to an amount over one thousand dollars."); Greenspan, 937 F. Supp. at 295 n.2 ("Even if plaintiffs replead their section 349 claims, that statute does not authorize an award of punitive damages."); see also American Medical Assoc. v. United Healthcare Corp., No. 00 Civ. 2800, 2002 WL 31413668, at *13 (S.D.N.Y. Oct. 23, 2002) ("In New York University, the plaintiff had also alleged deceptive business practices in violation of § 349, but this did not prevent the Court of Appeals from finding that the complaint failed to state a tort independent of the contract.") (citation omitted); Makuch v. New York Cent. Mut. Fire Ins. Co., 785 N.Y.S.2d 236, 237-38 (N.Y. App. Div. 2004) (4th Dep't).

-7-

the parties," (Defs.' Mem. at 5-6); and (iv) "the policy specifically excludes coverage for consequential loss . . . ."  (Defs.' Reply at 5.)

Plaintiff responds that: (i) "[t]he complaint adequately alleges that USF&G knew full well at the time it issued its policy to Dr. Cohen that, in the event of a bad faith denial of benefits, it would result in additional, consequential damages"; (ii) there is no requirement "that the Policy contain a specific provision or language permitting the recovery of consequential damages"; and (iii) that consequential damages are reasonably foreseeable and within the contemplation of the parties "in light of the 'specific protection [business interruption] coverage provides.'"  (Pl. Mem. at 12-14) (quoting Sabbeth Indus., Ltd. v. Pennsylvania Lumbermens Mut. Ins. Co., 656 N.Y.S.2d 475, 477 (N.Y. App. Div. 1997) (3d Dep't)).

Consequential damages "must have been . . . within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting."  Kenford Co. v. County of Erie, 537 N.E.2d 176, 178 (N.Y. 1989) (internal quotation omitted); see also Globecon Group, LLC v. Hartford Fire Ins. Co., No. 03 Civ. 0023, 2003 WL 22144316, at *3 (S.D.N.Y. Sept. 17, 2003) ("The Second Circuit Court of Appeals, the New York Court of Appeals, [and] courts in the Southern District . . . have all held consistently that [consequential] damages are unavailable in insurance cases, unless the plaintiff alleges that the specific injury was of a type contemplated by the parties at the time of contracting.").  "In determining the reasonable contemplation of the parties, the nature, purpose and particular circumstances of the contract known by the parties should be considered, as well as what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made."  Kenford, 537 N.E.2d at 179 (internal quotations and citations

omitted).

The Amended Complaint does not sufficiently state what damages resulted from USF&G's breach of the Policy and/or that such damages were within the contemplation of the parties at the time of or prior to issuance of the Policy. (See Compl. ¶¶ 30 ("As a result of USF&G's conduct, Dr. Cohen has been forced to sustain additional, consequential damages."), 35 ("USF&G's breach of contract proximately caused Dr. Gordon to sustain . . . consequential damages in an as of yet undetermined amount . . . .").).[2] See Kenford, 537 N.E.2d at 179 (in determining whether consequential damages were within contemplation of the parties, courts must consider "what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made."); see also Globecon, 2003 WL 22144316, at *3 (plaintiff must allege "that the specific injury was of a type contemplated by the parties at the time of contracting.").[3]

## D. Attorneys' Fees

Defendants argue that "plaintiff's conclusory allegations are insufficient to support a

---

[2] To the extent that Plaintiff may be seeking consequential damages on the basis of his Third Cause of Action (see Compl. ¶¶ 49-50), such a recovery is not permitted. See Continental Information Sys. v. Federal Ins. Co., No. 02 Civ. 4168, 2003 WL 145561, at *3-4 (S.D.N.Y. Jan. 17, 2003); Brown v. Paul Revere Life Ins. Co., No. 00 Civ. 9110, 2001 WL 1230528, at *3-6 (S.D.N.Y. Oct. 16, 2001).

[3] The Court need not at this time evaluate the statement in Sabbeth Industries, Ltd. v. Pennsylvania Lumbermens Mutual Insurance Co. that "[t]he very purpose of business interruption coverage would make defendant aware that if it breached the policy it would be liable to plaintiffs for damages for the loss of their business as a consequence of its breach or made it possible for plaintiffs reasonably to suppose that defendant assume such damages when the contract was made." 656 N.Y.S.2d at 477. See also Hold Bros., 357 F. Supp. 2d at 656-58; Lava Trading, 326 F. Supp. 2d at 439-41; Brody Truck Rental, Inc. v. Country Wide Ins. Co., 717 N.Y.S2d 43, 44 (N.Y. App. Div. 2000) (1st Dep't); Martin v. Metro. Property & Cas. Ins. Co., 656 N.Y.S.2d 318, 318 (N.Y. App. Div. 1997) (2d Dep't); Sabbeth, 656 N.Y.S.2d at 477.

claim for attorneys fees." (Def. Reply at 9.) Plaintiff responds that he has sufficiently alleged that Defendants denied coverage in bad faith so as to support a claim for attorneys' fees, and that "an evidentiary showing of bad faith" is not required. (Pl. Mem. at 7.)

"It is well established that an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy." New York Univ., 662 N.E.2d at 772. An exception exists where "'there has been an unreasonable, bad faith denial of coverage.'" New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.), No. 98 Civ. 7840, 1999 WL 1277244, at *5 (S.D.N.Y. Nov. 29, 1999) (quoting New England Mut. Life Ins. Co. v. Johnson, 589 N.Y.S.2d 736, 738 (N.Y. Sup. Ct. 1992)); see also Sukup v. State of New York, 227 N.E.2d 842, 844 (N.Y. 1967); Wurm v. Commercial Ins. Co. of Newark, New Jersey, 766 N.Y.S.2d 8, 13 (N.Y. App. Div. 2003) (1st Dep't). To succeed, a plaintiff must make "a showing of such bad faith in denying coverage that no reasonable carrier would, under the given facts, be expected to assert it." Sukup, 227 N.E.2d at 844; see also Federal Deposit Ins. Corp. v. National Surety Corp., 425 F. Supp. 200, 204 (E.D.N.Y. 1977); Dawn Frosted Meats, Inc. v. Insurance Co. of N. Am., 470 N.Y.S.2d 624, 625 (N.Y. App. Div. 1984) (1st Dep't) ("Bad faith has been said to exist 'where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motive.'") (quoting Walker v. Sheldon,179 N.E.2d 497, 498 (N.Y. 1961)). If the insurer's reason(s) for denial of coverage is "arguable," then a plaintiff is not entitled to attorneys' fees. See Sukup, 227 N.E.2d at 844.

Plaintiff's allegations, presumably made in support of his claim for attorneys' fees, are

conclusory.  (See Compl. ¶ 48.)⁴  And, it is unclear how, if at all, USF&G's refusal to pay Plaintiff's loss is connected to an alleged scheme to "artificially reduce the amount [it] would pay claimants for all business interruption losses occurring after the 9/11/01 tragedy."  (Id. ¶ 38.)  Plaintiff's claim for attorneys' fees does not provide fair notice as to "the grounds upon which it rests."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (internal quotation omitted); see also Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (dismissal warranted where claim is "confused, ambiguous, vague, or otherwise unintelligible [such] that its true substance, if any, is well disguised."); Lava Trading, 326 F. Supp. 2d at 438.

**E.  Non-USF&G Defendants**

Defendants argue that the non-USF&G Defendants "have no contractual or other relationship to plaintiff" and, therefore, "there is no basis for a claim of breach of contract against [them]."  (Def. Mem. at 13.)⁵

To the extent Plaintiff alleges that the non-USF&G Defendants breached a contract duty (see, e.g., Compl. ¶ 50), such allegations are dismissed because Plaintiff has not alleged a contractual relationship with any of the non-USF&G Defendants.  See, e.g., Carruthers v. Flaum, No. 03 Civ. 7768, 2005 WL 767875, at *21 (S.D.N.Y. Mar. 31, 2005) ("It is . . . well established that a plaintiff in a breach of contract action may not assert a cause of action to recover damages for breach of contract against a party with who[m] it is not in privity.") (internal quotations

---

⁴  Plaintiff's Third Cause of Action does not appear to state a claim separate and apart from Plaintiff's breach of contract claim.  See, e.g., Manning v. Utilities Mut. Ins. Co., No. 98 Civ. 4790, 2004 WL 235256, at *2-4 (S.D.N.Y. Feb. 9, 2004); Globecon, 2003 WL 22144316, at *2; New York Univ., 662 N.E.2d at 766-70.

⁵  Defendants also charge that "St. Paul Fire and Marine Insurance" and "St. Paul Travelers" are improperly named.  (Defs.' Mem. at 13.)

omitted).

## V. Conclusion

For the reasons stated above, Defendants' motion to dismiss is granted. Leave to replead is also granted to Plaintiff consistent with this Decision and Order with respect to Plaintiff's GBL § 349 claim, and Plaintiff's claims for punitive damages, consequential damages, and attorneys' fees arising out of his breach of contract claim.

The parties and counsel are directed to appear at a scheduling/settlement conference with the Court on June 1, 2005 at 9:00 a.m., in Courtroom 706 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York 10007. **The Court directs the parties to engage in good faith settlement negotiations prior to the conference with the Court.**

Dated: New York, New York
      May 3, 2005

*/s/ RMB*

Richard M. Berman, U.S.D.J.